UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-523-FDW
(3:11-cr-49-FDW-1)

| | |
|---|---|
| **RODNEY W. WHITNEY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

I.     **BACKGROUND**

Petitioner was charged by Bill of Information[1] with: Count (1), conspiracy to commit mail fraud and wire fraud; and Count (2), conspiracy to commit money laundering. (3:11-cr-49, Doc. No. 1).

Petitioner pled guilty to both counts pursuant to a written plea agreement. The agreement sets forth the statutory maximum sentence for each count and provides that the U.S. Sentencing Guidelines will apply, that the sentence has not yet been determined, and that the Court will not be bound by any agreement or recommendation regarding the sentence. (3:11-cr-49, Doc. No. 2 at 1-2). The parties agreed to jointly recommend the following with regards to the Presentence Investigation Report ("PSR"): a base offense level of seven; eighteen levels for a loss amount of

---

[1] Petitioner waived indictment by a grand jury. See (3:11-cr-49, Doc. No. 2 at 1); (3:11-cr-49, Doc. No. 50 at 5).

1

more than $2,500,000 and less than $7,000,000; two levels for ten or more victims; two levels for sophisticated means; and two levels for role as organizer, leader, manager, or supervisor. This would result in an adjusted offense level 31. (3:11-cr-49, Doc. No. 2 at 2). The parties agreed not to recommend any other enhancements or reductions, and to seek a sentence within the applicable guidelines range without departure or variance. (3:11-cr-49, Doc. No. 2 at 3).

The written plea agreement provides that Petitioner agrees to pay full restitution in the amount of $2,185,063.99 to all victims of defendant's criminal conduct. Petitioner understands that such restitution will be included in the Court's Order of Judgment and an unanticipated amount of a restitution order will not serve as grounds to withdraw the plea. (3:11-cr-49, Doc. No. 2 at 3). He also agreed to forfeiture and waived the right to notice of forfeiture under Rule 32.2 and of any other action or proceeding regarding such assets. (3:11-cr-49, Doc. No. 2 at 4).

The written agreement provides that Petitioner stipulates that there is a factual basis for the plea of guilty and that the Court may determine the factual basis for the plea based on the Factual Basis in Support of Guilty Plea, signed by the defendant and his counsel, as well as the offense conduct set out in the PSR, "except any facts to which the defendant has objected." (3:11-cr-49, Doc. No. 2 at 5). Petitioner waived "all right to contest the conviction except for: (1) claims of ineffective assistance of counsel or (2) prosecutorial misconduct." (3:11-cr-49, Doc. No. 2 at 6).

A separately filed factual proffer sets forth the offense conduct. It includes the admission that Petitioner "retained at least $237,391.33 of investors' monies for his personal use." (3:11-cr-49, Doc. No. 5 at 3). He further admits that, "[a]fter misappropriating $3,290,000 of investor funds, [Petitioner] repaid some monies back to investors. Following those payments, [Petitioner's]

conduct resulted in a total outstanding loss to investors of $2,185,063.99." (3:11-cr-49, Doc. No. 5 at 3).

A Rule 11 plea hearing came before Magistrate Judge Cayer on March 21, 2011. (3:11-cr-49, Doc. No. 50). At that time, Petitioner acknowledged that he received a copy of the Bill of Information and went over it with counsel. (3:11-cr-49, Doc. No. 50 at 3, 7). He fully understood the charges and potential penalties. (3:11-cr-49, Doc. No. 50 at 4-5). Petitioner stated that, after consulting with his attorney, he wanted the Court to accept his guilty plea to the two counts in the bill of information and consented to proceed before a magistrate judge. (3:11-cr-49, Doc. No. 50 at 6). Petitioner was not under the influence of alcohol or drugs and had a clear mind. (3:11-cr-49, Doc. No. 50 at 6).

Petitioner spoke to his attorney about how the sentencing guidelines would apply to his case. The magistrate judge asked "Do you understand that the district judge will not be able to determine the applicable sentencing guideline range until after your presentence report has been prepared and you've had an opportunity to comment on it." (3:11-cr-49, Doc. No. 50 at 8). Petitioner responded "Yes, sir." (Id.).

Petitioner confirmed that he understood that he may receive a sentence that is different from what is called for in the guidelines, that the Court may order restitution, and that he is still bound by the plea even if the sentence is more severe than he expects. (3:11-cr-49, Doc. No. 50 at 9). He understood that the plea agreement includes a two-level enhancement for role and restitution in the amount of $2,185,063.99 (3:11-cr-49, Doc. No. 50 at 13-14).

Petitioner also confirmed that he understood the rights he was waiving by pleading guilty, including the right to plead not guilty, have a speedy trial before a jury, summon witnesses to

testify, and confront the witnesses against him. (3:11-cr-49, Doc. No. 50 at 10). He admitted that he is in fact guilty of the counts to which he is pleading guilty. (3:11-cr-49, Doc. No. 50 at 10). Petitioner stipulated that there is a factual basis for the plea. (3:11-cr-49, Doc. No. 50 at 15). Petitioner further acknowledged that the right to appeal his conviction and sentence, and his right to challenge his conviction and sentence in a post-conviction proceeding have been expressly waived in the plea agreement. (3:11-cr-49, Doc. No. 50 at 19). Nobody threatened, intimidated, or forced him to plead guilty, he was not promised anything other than what is contained in his plea agreement, and he had enough time to discuss it with counsel. (3:11-cr-49, Doc. No. 50 at 20).

The Court then asked Petitioner whether he was satisfied with the services that counsel had provided and Petitioner stated he is extremely satisfied:

> THE COURT: Are you satisfied with the services of your attorney in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything that you would like to say at this time about the services of your attorney?
>
> THE DEFENDANT: **He's answered all my questions and been there when I needed to speak with him, so I'm extremely satisfied with him**.

(3:11-cr-49, Doc. No. 50 at 20) (emphasis added).

Petitioner heard and understood all parts of the pleading, still wished to plead guilty, did not have any questions, and did not wish to make any statements. (3:11-cr-49, Doc. No. 50 at 21). Defense counsel stated that he reviewed each and every term of the plea agreement with Petitioner and is satisfied that he understands them. (3:11-cr-49, Doc. No. 50 at 21)

Magistrate Judge Cayer accepted the guilty plea. (3:11-cr-49, Doc. No. 11).

The PSR calculated the base offense level as seven and added: 16 levels for a loss exceeding $1,000,000 but less than $2,500,000 with an actual loss amount of $2,077,488.39; two levels for more than 10 victims; two levels for sophisticated means; one level for conspiracy to violate 18 U.S.C. § 1957; and two levels for role. (3:11-cr-49, Doc. No. 19 at ¶¶ 25, 30, 31, 33, 75). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 27. (3:11-cr-49, Doc. No. 19 at ¶¶ 37, 38, 39). Petitioner had zero criminal history points and a criminal history category of I. (3:11-cr-49, Doc. No. 19 at ¶¶ 43, 44). The resulting guidelines imprisonment range was **70-87** months. (3:11-cr-49, Doc. No. 19 at ¶ 65). The PSR notes that, although the Plea agreement set forth an 18-level enhancement for loss, the loss established by the offense conduct was $2,075,163.99, which only calls for a 16-level enhancement. (3:11-cr-49, Doc. No. 19 at ¶ 66). Further, the plea agreement did not include an enhancement for a conviction under 18 U.S.C. § 1956(h), conspiracy to violate 18 U.S.C. § 1957. (Id.). Therefore, the plea agreement provides for a total offense level that is higher than the range in the PSR. (Id.).

Petitioner did not file any written objections to the PSR. See (Doc. No. 19 at 17).

The sentencing hearing came before the Court on January 7, 2013. (3:11-cv-49, Doc. No. 47). Petitioner agreed that he recalled appearing before Magistrate Judge Cayer and answering questions under oath, all of which are true and correct and his answers would be the same if he was asked them again today. (3:11-cv-49, Doc. No. 47 at 3). Petitioner reviewed the "Acceptance of Plea" form listing the questions that the magistrate judge asked, checked it for accuracy, and signed it. (3:11-cv-49, Doc. No. 47 at 3). Petitioner admitted that he is, in fact, guilty of the two felonies that he admitted to on March 21, 2011. (3:11-cv-49, Doc. No. 47 at 4). The Court therefore affirmed Magistrate Judge Cayer's acceptance of the plea at the Rule 11 hearing.

The Court noted that the written factual basis that the parties had signed is quoted *verbatim* in the PSR, and the parties stated they had no objection. (3:11-cv-49, Doc. No. 47 at 5). The Court found there is a factual basis based on the stipulation and agreement as well as the offense conduct set forth in the PSR. (3:11-cv-49, Doc. No. 47 at 5). The Court then confirmed that Petitioner had received and read a copy of the PSR:

> THE COURT: … Now, Mr. Whitney, after you entered your pleas of guilty your case was referred to the United States Probation office for a Presentence Investigation and Report. I'm holding up a copy of that report. Have you received and read this report?
>
> DEFENDANT WHITNEY: Yes, sir.
>
> THE COURT: Do you fully understand it?
>
> DEFENDANT WHITNEY: Yes, sir.
>
> THE COURT: **Have you gone over the report with Mr. Harp?**
>
> DEFENDANT WHITNEY: **Yes, sir.**
>
> THE COURT: **Has Mr. Harp answered any questions you have regarding the report?**
>
> DEFENDANT WHITNEY: **Yes, he has.**
>
> THE COURT: Mr. Harp and Mr. March, there are no objections to the report, correct?
>
> MR. MARSH: There are none, Your Honor.
>
> MR. HARP: That's correct, Your Honor.

(3:11-cv-49, Doc. No. 47 at 5-6) (emphasis added).

The Court adopted the PSR without change and the parties agreed that the applicable guideline range is 70-87 months' imprisonment. (3:11-cv-49, Doc. No. 47 at 6). However, the Government moved for a 25% downward departure based on substantial assistance investigating

and prosecuting his co-conspirator pursuant to U.S. Sentencing Guidelines § 5K1.1. (3:11-cv-49, Doc. No. 47 at 7, 10).

The Court told Petitioner he had the opportunity to address the Court if he chose to do so. Petitioner stated "Yes, Your Honor," and proceeded to express his remorse and requested leniency in light of his cooperation. (3:11-cv-49, Doc. No. 47 at 12).

The Government called several victims to give statements, then Court said "Anyone else in the courtroom that would like to make a statement?" (3:11-cv-49, Doc. No. 47 at 23). There was no response from Petitioner or anyone else.

The Court granted the Government's departure motion and reduced the offense level from 27 down to 24 which reduced the guideline range to **51-63** months. (3:11-cv-49, Doc. No. 47 at 27). The Court went on to state that "[a] variance downward is certainly inappropriate because of the nature and circumstances of this offense." (3:11-cv-49, Doc. No. 47 at 31). It imposed a sentence of 60 months' imprisonment on each count, concurrent, followed by three years of supervised release, and restitution in the amount of $2,077,488.39. (3:11-cv-49, Doc. No. 47 at 32-33, 35); (3:11-cr-49, Doc. No. 27); see (3:11-cr-49, Doc. No. 35) (Amended Judgment correcting typographical errors in special assessment and restitution amounts).

On January 27, 2014, Petitioner filed a motion to vacate pursuant to § 2255 that was opened as a separate civil case, number 3:14-cv-45. Petitioner argued that trial counsel was ineffective for failing to: (1) review the contents of his PSR with Petitioner which resulted in Petitioner's inability to consider the PSR and file written objections, resulting in a higher sentence; (2) object to an erroneous guideline calculation, amount of restitution or loss calculation, and properly prepare for the sentencing hearing; and (3) consult with Petitioner concerning the possibility of filing a direct appeal. The Court granted relief in part on June 16, 2014, and vacated the Amended

7

Judgment so Petitioner could exercise his right to file a timely appeal, and dismissed the other claims without prejudice. Whitney v. United States, 2014 WL 2715774 (W.D.N.C. June 16, 2014). Petitioner appealed the portion of the order dismissing the claims without prejudice, but the Fourth Circuit dismissed the appeal on December 19, 2014. United States v. Whitney, 588 Fed. Appx. 257 (4th Cir. 2014).

On direct appeal, Petitioner argued that trial counsel was ineffective for failing to object to the order of restitution and application of a two-level enhancement to his offense level for his aggravating role. The Fourth Circuit affirmed on June 24, 2015. United States v. Whitney, 607 Fed. Appx. 325 (4th Cir. 2015). It declined to reach Petitioner's claims of ineffective assistance of counsel because the record did not conclusively establish ineffective assistance, and therefore, "these claims should be raised, if at all, in a § 2255 motion." Id. at 325.

Petitioner timely filed the instant § 2255 motion to vacate on October 22, 2015. He argues that (renumbered): (1) trial counsel was ineffective for:[2] (a) failing to discuss the PSR, its impact, and his ability to challenge any errors contained in it, pursuant to Rule 32; (b) failing to object to the PSR's erroneous role enhancement, loss calculation, and restitution amount; and (c) failing to prepare Petitioner for sentencing by notifying him he would have the opportunity to address the Court and present witnesses and letters in support of mitigation; and (2) appellate counsel was ineffective for failing to raise sentencing errors and instead raised ineffective assistance claims that he should have known were not cognizable on direct appeal.

---

[2] In his "Declaration" in support of the § 2255 motion to vacate, Petitioner refers to interactions between himself and counsel leading up to the plea agreement. (Doc. No. 1-2 at 4-5). The knowing and voluntary plea agreement waived any ineffective assistance of counsel claim that preceded it, except insofar as the ineffectiveness rendered the plea involuntary. Blackledge v. Perry, 417 U.S. 21, 29-30 (1974); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). It does not appear, however, as though Petitioner is raising a claim that counsel's alleged misadvice rendered the plea involuntary. Even if he did intend to raise such a claim, it is facially insufficient insofar as he fails to allege he would not have pled guilty but for counsel's alleged misadvice. Further, any such claim is conclusively refuted by the record which indicates Petitioner's plea was freely, voluntarily, and knowingly entered with full knowledge of its consequences as mandated by Rule 11. See (3:11-cv-49, Doc. Nos. 2, 11, 47, 50).

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under .

. . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

Strickland also applies in the context of appellate representation. To show prejudice in such cases, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–

86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

There is a narrow exception to Strickland's prejudice prong where a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial." Bell v. Cone, 535 U.S. 685, 695 (2002). This exception applies when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." United States v. Cronic, 466 U.S. 648, 658 (1984). Cronic applies "when ... the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," Id. at 659-660. One circumstance warranting the presumption is the "complete denial of counsel," that is, when "counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." Wright v. Van Patten, 552 U.S. 120, 124-25 (2008) (quoting Cronic, 466 U.S. at 659).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### (1) Ineffective Assistance of Trial Counsel

(a) First, Petitioner contends that trial counsel was ineffective for failing to discuss the PSR, its impact, and his ability to challenge any errors contained in it. This resulted in a sentence longer than, and a restitution order greater than, he should have received.

Petitioner's claim that counsel never met with him to review and discuss the contents of the PSR is refuted by the record. Petitioner stated in open court at the sentencing hearing that he received and read the PSR, fully understood it, went over it with counsel, and that counsel answered his questions. (3:11-cv-49, Doc. No. 47 at 5-6). Petitioner's contention that he did not know it was possible to object to the PSR and its alleged factual errors is also refused by the record. The written plea agreement provides that the Court may determine the factual basis for the plea based on the written factual basis as well as the offense conduct set out in the Presentence Report, "**except any facts to which the defendant has objected**." (3:11-cr-49, Doc. No. 2 at 5) (emphasis added). Magistrate Judge Cayer told Petitioner during the Rule 11 hearing that the Court would determine the applicable sentencing guideline range after the PSR has been prepared **"and you've had an opportunity to comment on it**," and Petitioner indicated he understood. (3:11-cr-49, Doc. No. 50 at 8) (emphasis added). At the sentencing hearing, counsel repeatedly stated on Petitioner's behalf that there were no objections to the PSR and Petitioner stood silent on the issue, even when he directly addressed the Court. (3:11-cv-49, Doc. No. 47 at 5-6). The record establishes that Petitioner knew, at the time he entered his plea and at the time of sentencing, that he would have the opportunity to object to the PSR. Petitioner's present self-serving claims to the contrary are rejected. See generally Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

(b) Next, Petitioner contends that trial counsel was ineffective for failing to object to the erroneous role enhancement, loss calculation, and restitution amount. Neither the PSR nor Government articulated a criminally responsible "participant" that petitioner supervised as required under § 3B1.1(c) to support the 2-point role enhancement. (Doc. No. 1-1 at 10). The loss amount in the PSR was based on losses beyond those resulting from the underlying offense conduct. Financial losses due to legitimate activity, and unrelated to unlawful activity, should not be included by a court when calculating losses resulting from the underlying offense conduct. Petitioner was denied the opportunity to fully develop this objection and present it as a basis for a lower loss amount. Counsel's failure to challenge the inaccurate loss calculation resulted in a higher loss amount and higher guideline range. But for counsel's deficiency, there is a reasonable probability that the loss calculation would have been lower and the sentence would have been lower. As to restitution, the PSR determined the amount to be $2,077,488.39, however, that does not take into account payments made to investors, or the money Petitioner turned over to the Government during the investigation by the Postal Inspector. The amount should have been $1,981,477.62. The sentence was therefore based on unreliable evidence and violated due process. Petitioner alleges that counsel's deficient performance prejudiced him because it deprived him the opportunity to make timely objections and suggested to the Court at sentencing that Petitioner agreed with, or accepted, the PSR's factual findings, guideline calculations, and amount of restitution when these were actually erroneous. But for counsel's ineffectiveness there is a reasonable probability that the offense level would have been 25 rather than 27 with a guideline

range of 57-71 months before a reduction for substantial assistance, and restitution of $1,981,477.62 instead of $2,077,488.39.

Counsel cannot be deemed deficient for failing to file written PSR objections with regards to the role enhancement, loss calculation, or restitution amount, because they were precluded by Petitioner's plea agreement and factual proffer. The written plea agreement called for the parties to jointly recommend a loss amount of more than $2,500,000 and less than $7,000,000; a role enhancement as organizer, leader, manager, or supervisor; and restitution in the amount of $2,185,063.99. (3:11-cr-49, Doc. No. 2 at 2-3). The written factual proffer sets the "total outstanding loss to investors" at $2,185,063.99. (3:11-cr-49, Doc. No. 5 at 3). The PSR calculated a loss amount lower than the one contemplated by the plea agreement, between $1,000,000 and less than $2,500,000; the same two-level role enhancement contained in the plea agreement; and a restitution amount lower than the one in the plea agreement and factual proffer of $2,077,488.39. (3:11-cr-49, Doc. No. 19 at ¶¶ 25, 30, 31, 33, 75). The Court adopted these findings and imposed a sentence within a reduced guideline range pursuant to the Government's 5K1.1 motion. There was no basis for counsel to object to the PSR as the role enhancement, loss calculation, and restitution amount were the same as, or lower than, those contained in the plea agreement and written factual proffer. An objection by counsel to these provisions are contrary to Petitioner's agreement and would have jeopardized that agreement, which would have resulted in a higher sentence than the 60 months that Petitioner received. Counsel cannot be deemed deficient for failing to object to the PSR under these circumstances. See generally Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

(c) Finally, Petitioner contends that trial counsel was ineffective for failing to prepare Petitioner for sentencing by notifying him that he would have the opportunity to address the Court and present witnesses and letters in support of mitigation. Counsel informed Petitioner of the January 7, 2013, sentencing hearing via phone call in late December 2012. Petitioner asked if they should meet or do anything to prepare and counsel said it was unnecessary and they would meet at the courthouse on the date of sentencing. Petitioner did not hear from counsel again until the morning of sentencing. They did not prepare in advance and counsel did not explain the sentencing process at all. Petitioner was not informed that he could present mitigating evidence, submit letters from family and friends, or call witnesses. Nor did counsel advise petitioner that he could make a statement and plead for leniency before the sentence was imposed. Petitioner was therefore caught totally unprepared when the Court asked if he wanted to make a statement. Had counsel properly informed Petitioner, he would have submitted letters from church members, family and friends, and other "pillars of the community" who would have attested to Petitioner's character. (Doc. No. 1-1 at 10). He also would have invited witnesses including his wife to testimony about his impact as a father, husband, and beneficial member of the community. (Doc. No. 1-1 at 10). He would have used this evidence to ask the Court for a deeper sentence reduction. Petitioner was prejudiced because he was completely deprived of the opportunity to present facts in mitigation of the sentence. Absent counsel's ineffectiveness, there is a reasonable probability that Petitioner's sentence would have been shorter.

The record does not support Petitioner's allegations that he was unprepared to make his own statement or present witnesses and letters in support of mitigation. The Court asked Petitioner at the sentencing hearing whether he would like to make a statement. Petitioner responded "yes" and explained why he was seeking leniency without expressing surprise or lack of preparation.

(3:11-cv-49, Doc. No. 47 at 12). After several victims made statements at the sentencing hearing, the Court asked whether there was anyone else who wanted to speak and Petitioner did not tell the Court that he wanted the opportunity to present any witnesses or letters. (3:11-cv-49, Doc. No. 47 at 23). Further, Petitioner has failed to demonstrate prejudice. Petitioner presently claims that, but for counsel's deficient performance, he could have been better prepared to address the Court, and that he would have called his wife to testify and that numerous members of the community would have written letters for him. However, he has not filed any of the alleged mitigation letters, or proffered his own mitigation statement, or a statement from his wife.[3] Nor does he explain what he or his mitigation witnesses could have told the Court that probably would have led to a lower sentence.[4] See generally Bowie, 512 F.3d at 120 (petitioner bears the burden of proof). There is no reasonable probability that the Court would have imposed a lower sentence even if Petitioner had provided additional mitigation evidence based on the nature and circumstances of the case.

Therefore, Petitioner's claims of ineffective assistance of trial counsel are denied because he has failed to demonstrate either that counsel performed deficiently or that any of counsel's alleged actions prejudiced him.

**(2)** **<u>Ineffective Assistance of Appellate Counsel</u>**

Petitioner contends that appellate counsel was ineffective for failing to know the applicable case law, disregarding his constitutional duty to Petitioner, and omitting significant and obvious

---

[3] Petitioner states in his "Declaration" in support of the § 2255 motion that, had counsel properly advised him, he "would have submitted letters and invited friends and support[ers] to speak on my behalf." (Doc. No. 1-2 at 6). The "Declaration" by Petitioner's wife states that counsel never told her that she could "make a plea for mercy to the court" on Petitioner's behalf. (Doc. No. 1-2 at 8).

[4] Because the plea agreement constrained the parties not to seek a departure or variance of the guidelines, the lowest sentence Petitioner could have requested was at the bottom of the revised guideline range of 51 months; he received 60 months.

16

issues in favor of weaker issues that left Petitioner no chance of prevailing on direct appeal. Counsel refused to consult with Petitioner. After Petitioner wrote to the Fourth Circuit about his concerns and desire for new appellate counsel, Petitioner later learned that counsel had filed a brief without having discussed the issues with him. Had counsel consulted with Petitioner, he would have told counsel that he was told that Fourth Circuit precedent precludes ineffective assistance claims on direct appeal, and would have asked counsel to challenge the erroneous role adjustment, guidelines loss calculation, and restitution amount. Counsel did not investigate the applicable law and raised two ineffective assistance of trial counsel claims on direct appeal that he should have known were not cognizable pursuant to Fourth Circuit case law, and ignored the stronger claims of sentencing errors. Prejudice should be presumed because counsel's deficient performance essentially deprived Petitioner of an appeal.

As a preliminary matter, Petitioner's reliance on the Cronic presumption-of-prejudice standard is misguided. Appellate counsel has no obligation to have specific communications or meetings with a criminal defendant, or to raise the claims a defendant wishes to assert on direct appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983) ("Neither Anders[5] for any other decision of this Court suggests … that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to press those points."). Strickland, rather than Cronic applies to claims that counsel should have raised a particular claim on direct appeal, and thus a defendant must show that he was prejudiced by counsel's failure to raise a specific appellate claim. Id. at 763.

Petitioner cannot satisfy Strickland because the PSR challenges that Petitioner has identified would have been barred and frivolous if raised on direct appeal. There is an appellate

---

[5] Anders v. California, 386 U.S. 738 (1967).

waiver in the plea agreement that precluded appellate counsel from raising any claims on appeal except for claims of ineffective assistance of counsel and prosecutorial misconduct. (3:11-cr-49, Doc. No. 2 at 6). Further, counsel could not, in good faith, challenge the alleged PSR errors because those provisions are consistent with the express terms of the plea agreement and Petitioner's admitted conduct. See (3:11-cr-49, Doc. Nos. 2, 5, 47, 50). Petitioner has thus failed to identify any non-frivolous issue that was likely to succeed on direct appeal. See, e.g., Call v. Branker, 254 Fed. Appx. 257 (4th Cir. 2007) (denying § 2254 claim of ineffective assistance of appellate counsel where the claim at issue would not have likely succeeded if raised as plain error of direct appeal).

Petitioner's claim of ineffective assistance of appellate counsel is, therefore, denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Petitioner's § 2255 motion to vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 23, 2018

Frank D. Whitney
Chief United States District Judge